**POOLE & SHAFFERY, LLP**
David S. Poole (SBN 94690)
  dpoole@pooleshaffery.com
Samuel R.W. Price (SBN 255611)
  sprice@pooleshaffery.com
400 South Hope Street, Suite 1100
Los Angeles, CA 90071
Telephone: (213) 439-5390
Facsimile: (213) 439-0183

Attorneys for Plaintiff
GILSULATE INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| GILSULATE INTERNATIONAL, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>RONALD L. DUNN, an individual, and d/b/a Pacific Sales Associates; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br>(1) **VIOLATIONS OF THE LANHAM ACT;**<br>(2) **VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.; AND**<br>(3) **VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.**<br><br>*[Federal Question Jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367(a), and 15 U.S.C. § 1121]* |

COMES NOW Plaintiff GILSULATE INTERNATIONAL, INC. ("Gilsulate" or "Plaintiff") and, for its Complaint against Defendants RONALD L. DUNN, an individual, and d/b/a Pacific Sales Associates ("Dunn"), and DOES 1 through 10, inclusive ("Doe Defendants"; Dunn and Doe Defendants are sometimes referred to collectively as "Defendants"), complains and alleges as follows:

POOLE▪▪▪SHAFFERY

400 South Hope Street, Suite 1100, Los Angeles, CA 90071
Telephone: (213) 439-5390   Facsimile: (213) 439-0183

POOLE■SHAFFERY
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

## PARTIES

1.     Plaintiff is a California corporation with its principal place of business in the state of California.

2.     Upon information and belief, Defendant Dunn is a citizen of the State of California, who does business under the fictitious business name "Pacific Sales Associates."

3.     Plaintiff is currently unaware of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these defendants by such fictitious names ("Doe Defendants"). Plaintiff will seek leave to amend its complaint to allege the true names and capacities of these Doe Defendants when ascertained.

4.     Plaintiff is informed and believes and upon such information and belief alleges, that at all times mentioned herein, Defendants, and each of them, were and are the agent, servants, employees, parents, subsidiaries, and/or co-conspirators of each other, and were and are acting within the scope of such agency or employment, parent ownership, or subsidiary ownership.

## JURISDICTION AND VENUE

5.     Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121, because Plaintiff's claims for relief arise under the laws of the United States, namely 15 U.S.C. §§ 1051, et seq. (the "Lanham Act"). Additionally, pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the other claims for relief asserted herein because such claims are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy.

6.     Plaintiff is informed and believes and thereupon alleges that venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, including without limitation, the dissemination of false advertising to individuals in this District.

## GENERAL ALLEGATIONS

### General Background

7.     Gilsulate is the manufacturer of Gilsulate®500XR, a pour-in-place insulation material used to provide thermal insulation and corrosion protection for underground piping and geothermal distribution systems, storage tanks, and other structures.  Gilsulate®500XR is a proprietary product comprised of coated calcium carbonate and other industrial minerals that are specially selected, processed, and treated.  This formula was invented, engineered, and ultimately patented to create a product that offers thermal insulation and corrosion protection, as well as load-bearing capabilities that are unavailable from coated calcium carbonate alone.

8.     A competing product in the market for pour-in-place insulation is marketed by DriTherm International, Inc. ("DTI") under the name "DriTherm," which was, and still is, comprised exclusively of coated calcium carbonate.  Sales of the DriTherm product are primarily made directly by independent sales representatives or distributors acting on behalf of DTI.  One such sales representative or distributor is Defendant Dunn.

9.     Gilsulate®500XR and DriTherm are, by far, the two most prominent pour-in-place products in the underground insulation marketplace.  Although the products are visually similar and are applied in a similar manner, Gilsulate®500XR is physically and chemically distinct from DriTherm.

### Prior Related Litigation

10.     On February 12, 2013, Gilsulate initiated litigation against DTI in the United States District Court for the Central District of California (Case No. 2:13-cv-01012-RSWL-JPR) for violations of sections 43(a)(1)(a) and (b) of the Lanham Act (15 U.S.C. § 1125(a)(1)) and related causes of action under California law, in connection with sales and marketing of DriTherm (the "DTI Case").

11.     As alleged in the DTI Case, in order to compete with Gilsulate®500XR, DTI had engaged in a campaign of false advertising and

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

disparagement, and dissemination of false, deceptive, and misleading information into the underground pipe insulation marketplace through, among other things:

- Publishing false technical specifications for the DriTherm product;
- Misrepresenting DriTherm's performance characteristics and understating the quantity of DriTherm material required for proper installation and corresponding thermal properties;
- Fabricating fictitious approvals of DriTherm from various governmental agencies; and
- Falsely claiming compliance with governmental specification requirements and standards.

*Stipulated Permanent Injunction*

12.    On May 16, 2014, Gilsulate and DTI entered into a Settlement Agreement and Release ("Settlement Agreement"), which called for the entry of a Judgment for Stipulated Permanent Injunction ("Injunction") against the defendants in the DTI Case.

13.    On May 29, 2014, the Court entered the Injunction against the defendants in the DTI Case, a true and correct copy of which is attached hereto as Exhibit "1" and incorporated herein by reference.

14.    In stipulating to the entry of the Injunction, DTI acknowledged that many of the statements made in its advertising regarding the DriTherm product were false or otherwise not supported by evidence or valid testing.  Furthermore, expert analysis performed during the case contradicted certain representations regarding DriTherm's technical specifications and performance capabilities.

15.    Section 3 of the Injunction required that DTI provide written notification of the Injunction to all sales representatives or independent distributors identified in the Settlement Agreement, to advise them as follows:

a.    That DTI has been enjoined by the United Stated District Court for the Central District of California from engaging in certain conduct and making certain representations regarding DriTherm

POOLE SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390    FACSIMILE: (213) 439-0183

and Gilsulate®500XR, along with which a copy of this Injunction issued by the Court is to be provided;

b. That, as a condition of distributing or selling the product, the distributors, representatives, and sales persons must fully comply with all of the terms of the Injunction;

c. That DTI will provide revised product literature that fully complies with the Injunction;

d. That the distributors, representatives, and sales persons must immediately destroy all printed materials that do not fully comply with the terms of the Injunction;

e. That the distributors, representatives, and sales persons must immediately remove any information about DriTherm or Gilsulate products from the distributors', representatives', or sales persons' websites, and replace it only with newly prepared information to be provided by DTI; and

f. That distributors, representatives, and sales persons are not authorized to develop or distribute any materials about DriTherm without obtaining prior approval from DTI.

The independent distributors that were to receive this required notification were identified in Exhibit "C" the Settlement, a true and correct copy of which is attached hereto as Exhibit "2."[1]  Among the recipients was Defendant Dunn, identified as "Pacific Sales Associates."

16.    Section 4 of the Injunction required DTI to file with this Court an affidavit setting forth in detail the manner and form in which DTI complied with the terms of the Injunction.  On July 11, 2014, a document entitled "Declaration of Jared Sandman Concerning Compliance with the Terms of the Stipulated

---

[1] Due to the confidential nature of certain portions of the Settlement Agreement, only Exhibit "C," which identifies the persons and entities that were to receive the notification required under Section 3 of the Injunction, is attached.

POOLE■SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390    FACSIMILE: (213) 439-0183

1 Injunction" (the "Declaration") was filed in the DTI Case.  A true and correct copy

2 of the Declaration is attached hereto as Exhibit "3."

3      17.    Paragraphs 19 through 21 of the Declaration detail the written

4 notifications provided by DTI to its independent distributors, including Dunn.  The

5 Declaration specifically states that the letters were submitted to each of the

6 identified distributors on June 6, 2014, that DTI received proof of delivery for each,

7 and that DTI received email confirmation from "Pacific Sales Associates (Ron

8 Dunn)" that the letter comprising the written notification, along with a copy of the

9 Injunction, had been received.

10                 *Continued Publication of Misrepresentations*

11      18.    Notwithstanding having received a copy of the Injunction, and that the

12 Injunction clearly sets forth numerous representations that have been acknowledged

13 by DTI to be false or misleading, Defendants have knowingly and willfully

14 continued to distribute false and misleading representations of fact in connection

15 with their efforts to sell DriTherm against Gilsulate®500XR.

16      19.    Plaintiff is informed and believes that, notwithstanding DTI's

17 acknowledged falsity of representations about DriTherm's advertised performance

18 characteristics, Defendant Dunn is continuing to provide such information,

19 including the dissemination of a "DriTherm Specification Sheet," which contains

20 misrepresentations regarding the DriTherm product, as confirmed by DTI in the

21 Injunction.

22      20.    The "DriTherm Specification Sheet" contains the following

23 representations regarding DriTherm, each of which is false or unsupported by

24 evidence, and is specifically addressed in, and prohibited by, Section 1 of the

25 Injunction:

26          a.    "Temperatures below freezing: Only product of its kind rated for

27 soils in below freezing conditions."

28

POOLE⬛SHAFFERY
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

b. "Load Bearing: Easily supports high load conditions such as under road/highway conditions."

c. "Load Bearing: Up to 12,000 PSF"

d. "Thermal Conductivity: K = 0.58 [BTU-in/hr-ft^2-°F] @ 100°F; K = 0.68 [BTU-in/hr-ft^2-°F] @ 300°F"

e. "Temperature Range: Cryogenic (-273°F) to 480°F"

f. "Installed Density: 60-62 lbs/C.F."

g. "Meets Federal Specifications: DriTherm$^{TM}$ meets United Facilities Guide Specifications (UFGS 33 61 13) for new construction on military bases and federal institutions, which include the following agencies: Corps of Engineers, Naval Facilities Engineering, Department of the Air Force, and Veterans Administration."

h. "[DriTherm] is recommended for application temperatures between -275°F and +480°F…."

21. Furthermore, the "DriTherm Specification Sheet" contains additional representations regarding performance characteristics for DriTherm, which Plaintiff is informed and believes have not been determined through valid, appropriate testing performed by an independent, third party testing laboratory, as required by the terms of the Injunction. Such representations including the following:

a. "Hydrophobic: Withstands 10 ft. hydrostatic head of water for minimum of 14 days with moisture gain less than 0.02%"

b. "Electrical Resistivity: R=10^14 OHMS-CM"

c. "Dielectric Constant: 2.7"

d. "Friction Coefficient: 0.35 ± 0.04"

e. "DriWrap$^{TM}$ Compatability: Resistant to water wicking with DriWrap$^{TM}$"

22. Plaintiff is informed and believes that Defendants' continued campaign of false advertising has been undertaken and continued by Defendants knowingly,

POOLE ⸭ SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1  willfully, and in bad faith, with the intent to win contracts for underground piping

2  projects by advertising false or unsupported physical and performance properties for

3  DriTherm to depict it as an equivalent or superior, lower cost alternative to

4  Gilsulate®500XR.

5  ### DAMAGES

6      23.    As a direct and proximate result of Defendants' actions and

7  misrepresentations in connection with sales and marketing of DriTherm as described

8  herein, Plaintiff has suffered, is suffering, and will continue to suffer damage in the

9  form of direct financial loss through lost contracts and economic opportunities.

10      24.    As a further direct and proximate result of Defendants' actions and

11  misrepresentations, Plaintiff has been obligated to reduce the price of

12  Gilsulate®500XR in its bid proposals to compete with Defendants'

13  misrepresentations regarding the required quantity and technical specifications of

14  DriTherm.

15      25.    Furthermore, Plaintiff is informed and believes that the campaign of

16  false advertising, which Defendants are continuing and perpetuating, has conflated

17  and confused the DriTherm and Gilsulate®500XR products in the underground pipe

18  insulation marketplace.  Consequently, to the extent that DriTherm has or will fail to

19  perform to the false specifications advertised, Plaintiff is informed and believes that

20  such failures have and will falsely reflect on the reputation of all pour-in-place

21  products, especially Gilsulate®500XR.  Plaintiff is further informed and believes

22  that such DriTherm failures have already resulted in significant injury to

23  Gilsulate®500XR's reputation as an effective underground insulation and corrosion

24  protection system and have cast doubt on Gilsulate®500XR's ability to perform as

25  documented.

26      26.    Plaintiff is informed and believes that Defendants are not or may not be

27  capable of satisfying any judgment that may be awarded to compensate Plaintiff for

28  the harm committed by Defendant, and therefore a monetary judgment alone would

POOLE ::: SHAFFERY
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1  not afford Plaintiff adequate relief.  Additionally, unless Defendants' actions and

2  statements as described herein are enjoined by the Court, Plaintiff will sustain

3  irreparable harm to its goodwill in, and share of, the market.

## **FIRST CAUSE OF ACTION**

(Violations of the Lanham Act)

(Against All Defendants)

7      27.     Plaintiff incorporates by reference all of the foregoing allegations as if

8  fully set forth herein.

9      28.     In violation of Section 43(a)(1)(b) of the Lanham Act (15 U.S.C.

10  §1125(a)(1)), Defendants have made false or misleading descriptions and

11  representations of alleged fact in commercial advertisements about, among other

12  things, the nature, characteristics, and qualities of DriTherm, as described herein

13  above, each of which in and of itself is sufficient to constitute a violation.

14      29.     Defendants' statements have actually deceived or have the tendency to

15  deceive a substantial segment of potential customers and have been or would have

16  been material to customers' purchasing decisions because they go to the nature,

17  character, and quality of DriTherm.  Defendants caused the statements described

18  herein to enter interstate commerce through Defendants' commercial advertising

19  and promotion, including in the dissemination of printed marketing materials, and in

20  communications with customers or potential customers.

21      30.     The false advertising by Defendants described herein has harmed

22  Plaintiff by causing Plaintiff to lose sales and goodwill associated with Plaintiff and

23  Plaintiff's product in an amount to be determined at trial.  Further, Defendants' false

24  advertising has harmed and continues to harm Plaintiff's reputation in the

25  underground pipe insulation industry.

26      31.     Defendants' conduct threatens Plaintiff with further injury for which

27  Plaintiff has no adequate remedy at law.

28

*POOLE⋅SHAFFERY*
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1     32.    On information and belief, Plaintiff believes that Defendants have

2    published and disseminated the misrepresentations described herein with the

3    specific intent to cause existing or potential users of Plaintiff's product to use

4    DriTherm instead.  Defendants' acts are knowing, willful, and calculated to deceive,

5    and are undertaken in bad faith, making this an exceptional case entitling Plaintiff to

6    recover treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

7     33.    Defendants are liable to Plaintiff, jointly and severally, for the

8    violations of 15 U.S.C. § 1125(a)(1).

## SECOND CAUSE OF ACTION

(Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

(Against All Defendants)

34.    Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

35.    Defendants' activities and statements, including the creation, publication, and/or dissemination of misrepresentations regarding DriTherm constitute unfair competition, as defined by California Business and Professions Code Section 17200, *et seq.*  Each of the acts and practices described herein constitutes: (a) unlawful, unfair, or fraudulent business acts or practices; (b) unfair, deceptive, untrue, or misleading advertising; and/or (c) an act prohibited by California Business and Professions Code Section 17500, *et seq.*

36.    The general public is likely to be misled, deceived, and confused by Defendants' activities and statements regarding DriTherm, including without limitation: (a) misrepresenting DriTherm's technical specifications, properties, and performance characteristics; (b) understating the quantity of DriTherm material required for installation; and (c) falsely claiming compliance with governmental standards.

37.    Plaintiff is informed and believes and thereupon alleges that, as demonstrated by Defendants' willful disregard for the facts as stipulated to by DTI

POOLE▪▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

and adjudicated by this Court in the Judgment for Stipulated Permanent Injunction in the DTI Case, Defendants' unfair competition and unlawful, unfair, and fraudulent business practices will continue unless enjoined by the Court.  Further, Plaintiff is informed and believes that Defendants have been unjustly enriched through the receipt of sales from customers who would have purchased Plaintiff's product but for Defendants' unfair competition.  Defendants should be disgorged of all profits resulting from Defendants' unfair competition, and Plaintiff is entitled to recover such ill-gotten profits.

### THIRD CAUSE OF ACTION

(Violations of Cal. Bus. & Prof. Code §§17500, *et seq.*)

(Against All Defendants)

38.    Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

39.    Plaintiff brings this cause of action pursuant to Cal. Bus. & Prof. Code § 17535 in an individual capacity and not on behalf of the general public.

40.    Cal. Bus. & Prof. Code § 17508, subd. (a) provides, in pertinent part:

"It shall be unlawful for any person doing business in California and advertising to consumers in California to make any false or misleading advertising claim, including claims that (1) purport to be based on factual, objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or that (3) purport to be based on any fact."

41.    Defendants' activities and statements as described herein including without limitation: (a) misrepresenting DriTherm's technical specifications, properties, and performance characteristics; (b) understating the quantity of DriTherm material required for installation; and (c) falsely claiming compliance with governmental standards, constitute false advertising, as defined by California Business and Professions Code Section 17500, *et seq.*

POOLE⸱SHAFFERY
400 South Hope Street, Suite 1100, Los Angeles, CA 90071
Telephone: (213) 439-5390   Facsimile: (213) 439-0183

42.     Defendants' misrepresentations are or were available in marketing materials created, published, and/or disseminated by Defendants, which advertise for and actively solicit sales of DriTherm, and/or have been made to customers and potential customers in commercial settings or pursuant to an actual or potential commercial transaction.

43.     Defendants knew that the information contained in the statements and materials created, published, and/or disseminated by Defendants is false or misleading, as described in the foregoing paragraphs and the prior Injunction entered by this Court, and is likely to deceive a reasonable consumer.

44.     Plaintiff is informed and believes and thereupon alleges that, as demonstrated by Defendants' willful disregard for the facts as stipulated to by DTI and adjudicated by this Court in the Judgment for Stipulated Permanent Injunction in the DTI Case, Defendants' unfair competition and unlawful, unfair, and fraudulent business practices will continue unless enjoined by the Court.  Further, Plaintiff is informed and believes that Defendants have been unjustly enriched through the receipt of sales from customers who would have purchased Plaintiff's product but for Defendants' unfair competition.  Defendants should be disgorged of all profits resulting from Defendants' unfair competition, and Plaintiff is entitled to recover such ill-gotten profits.

## **PRAYER**

WHEREFORE, on the basis of the foregoing Complaint, Plaintiff respectfully requests a judgment against Defendants, and each of them, as follows:

On Its First Cause of Action for Violation of the Lanham Act:

1.     A temporary restraining order, preliminary injunction, and permanent injunction prohibiting Dunn and the Doe Defendants, and their respective or collective representatives and agents, from publishing or disseminating, and

directing the retraction of, all false and misleading information regarding DriTherm, and prohibiting any other conduct or statements found to violate the Lanham Act;

2.      Compensatory damages in an amount to be determined at trial;

3.      Treble damages pursuant to 15 U.S.C. § 1117; and

4.      An award of Plaintiffs reasonable attorneys' fees based upon a finding that this is an "exceptional" case pursuant to 15 U.S.C. § 1117(a).

On Its Second Cause of Action for Unfair Competition:

5.      A temporary restraining order, preliminary injunction, and permanent injunction prohibiting Dunn and the Doe Defendants, and their respective or collective representatives and agents, from publishing or disseminating, and directing the retraction of, all false and misleading information regarding DriTherm, and prohibiting any other conduct or statements found to constitute unfair competition; and

6.      Restitutionary relief for Plaintiff to restore any money which may have been acquired by means of Defendants' unfair competition.

On Its Third Cause of Action for False Advertising:

7.      A temporary restraining order, preliminary injunction, and permanent injunction prohibiting Dunn and the Doe Defendants, and their respective or collective representatives and agents, from publishing or disseminating, and directing the retraction of, all false and misleading information regarding DriTherm, and prohibiting any other conduct or statements found to constitute false advertising; and

8.      Restitutionary relief in the form of disgorgement of profits obtained by Defendants as a result of Defendants' false advertising.

On All Causes of Action:

9.      Declaring, adjudicating, and decreeing that Defendants are liable to Plaintiff for each cause of action brought against them, jointly and severally;

10.     For Plaintiff's costs and reasonable attorneys' fees; and

POOLE═SHAFFERY
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

11.   For such other and further relief as the Court may deem just and proper.

DATED: January 12, 2015                    **POOLE & SHAFFERY, LLP**


By: /S/  SAMUEL R.W. PRICE
David S. Poole
Samuel R.W. Price
Attorneys for Plaintiff
GILSULATE INTERNATIONAL, INC.

POOLE▪▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiff GILSULATE INTERNATIONAL, INC. hereby demands trial by jury in this action for all claims and issue so triable.

DATED: January 12, 2015          **POOLE & SHAFFERY, LLP**

By: /S/  SAMUEL R.W. PRICE
         David S. Poole
         Samuel R.W. Price
Attorneys for Plaintiff
GILSULATE INTERNATIONAL, INC.

POOLE ::: SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

# EXHIBIT "1"

JS-6

1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10                WESTERN DIVISION

11   GILSULATE INTERNATIONAL,              Case No.: 2:13-cv-01012-RSWL-JPR
     INC., a California corporation,
12                                         Judge:  Hon. Ronald S.W. Lew

                        Plaintiff,
13
           vs.
14                                         **JUDGMENT FOR STIPULATED**
15   DRITHERM INTERNATIONAL, INC.,         **PERMANENT INJUNCTION**
     a New Jersey corporation; JARED
16   SANDMAN, an individual; and DOES
     1 through 10, inclusive,
17
                        Defendants.
18

19

20       Plaintiff Gilsulate International, Inc. and defendants Dritherm International,

21   Inc. and Jared Sandman consent as follows:

22       WHEREAS, Plaintiff GILSULATE INTERNATIONAL, INC. ("Gilsulate" or

23   "Plaintiff") is a California corporation with its principal place of business in the

24   State of California;

25       WHEREAS, Defendant DRITHERM INTERNATIONAL, INC. ("DTI") is a

26   New Jersey corporation with its principal place of business in the state of New

27   Jersey;

28

1   WHEREAS, Defendant JARED SANDMAN ("Sandman") is a citizen of the

2   State of New York and is an owner, shareholder, officer, director, manager,

3   representative, and/or agent of Defendant DTI;

4   WHEREAS, Gilsulate and DTI are competitors in the market for insulation

5   and corrosion protection products, which are used to provide thermal insulation and

6   corrosion protection for underground piping systems, geothermal distribution,

7   storage tanks, and other metal structures;

8   WHEREAS, Gilsulate manufactures a product that is marketed and sold under

9   the name "Gilsulate®500XR";

10   WHEREAS, DTI's product is marketed and sold under the name "DriTherm";

11   WHEREAS, on February 12, 2013, Plaintiff commenced this action in which

12   it asserts claims for false advertising under Section 43 (a) of the Lanham Act, trade

13   libel, intentional interference with economic advantage, and for violations of

14   California Business and Professions Code §§ 17200 and 17500 against Defendants;

15   WHEREAS, Plaintiff alleges in the action that Defendants have, among other

16   things, made representations regarding the nature, character, and quality of

17   DriTherm, including disseminating information regarding the product's technical

18   specifications and performance capabilities, which are unsupported by valid testing;

19   WHEREAS, Defendants have advertised that the installed density of

20   DriTherm is 60-62 lbs/ft$^3$, but expert analysis in this case has determined that

21   installed densities of DriTherm are greater than the value advertised;

22   WHEREAS, Defendants have advertised that the thermal conductivity of

23   DriTherm is K = 0.58 at 100°F and K = 0.68 at 300°F, but expert analysis in this

24   case has determined that thermal conductivity of DriTherm is greater than the value

25   advertised;

26   WHEREAS, Defendants have made other statements in their advertising

27   materials and elsewhere about DriTherm and Gilsulate products that are not

28   supported by the evidence in this case;

2

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

1       WHEREAS, Plaintiff and Defendants have entered into a separate written

2 Settlement Agreement and Release ("Settlement Agreement") to resolve this action;

3       WHEREAS, the parties' Settlement Agreement provides, among other things,

4 that the Court may enter a permanent injunction against Defendants in a form

5 similar in all material respects to the form of injunction attached as an exhibit to the

6 parties' Stipulation for Entry of Judgment For  Permanent Injunction filed in this

7 action; and

8       WHEREAS, if an injunction is not issued, Plaintiff may suffer irreparable

9 harm:

10      Now therefore,

11      **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this

12 Court has jurisdiction over the subject matter of this action and over the parties

13 hereto and ORDERS as follows:

14

15      1. DTI, its officers, agents, servants, employees, and attorneys, and any other

16         persons who are in active concert or participation therewith, are hereby

17         enjoined from stating or communicating, in the advertising or promotional

18         materials or activities for DTI, any of the following claims in form or in

19         substance about DTI and the DriTherm product:

20

21          a. Any INSTALLED DENSITY for DriTherm unless the

22            specifications are supported by APPROPRIATE DENSITY

            TESTING.

23

24            As used herein, INSTALLED DENSITY shall mean the density

            of DriTherm after installation and compaction under a minimum

25            load of 400 pounds per square foot ("psf"), whether identified as

            "installed," "compacted," "in-use," "in-place," "in-situ," or any

26            similar terminology.

27

28            As used herein, APPROPRIATE DENSITY TESTING shall

            mean all of the following:

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

    i.    Testing performed by an independent, third party testing laboratory that is certified or accredited to perform the test methods being performed, irrespective of the modifications to the ASTM standard:

    1.  Testing of DriTherm in accordance with ASTM D1895, method C, modified to the equivalent of 400 psf;

    2.  Testing of DriTherm in accordance with ASTM D4253 (maximum) Method 1A and ASTM D4254 (minimum) Method A using the standard 0.1 ft$^3$ mold.  The only modification to these test standards will be the use of a non-woven geotextile placed beneath the surcharge base plate to prevent loss of the sample during the vibration phase of the ASTM D4253 test. The advertised or specified INSTALLED DENSITY must not be less than the value calculated for an 85% density index (using ASTM D4253, equation 6) where the minimum and maximum densities are the results of the ASTM D4254 and ASTM D4253 tests, respectively; or

    3.  Testing of DriTherm in accordance with ASTM D2435, at the resulting density of the material after the application of a surcharge load of not less than 400 psf.

    ii.    Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

b.  Defendants are entitled to advertise additional densities provided such densities are supported by APPROPRIATE DENSITY TESTING adjusted for additional loads.

c.  Unless APPROPRIATE DENSITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for INSTALLED DENSITY of DriTherm shall not be represented as less than:

    -  Quincy, IL:        76 lb/ft$^3$

4

- Marble Falls, TX:         80 lb/ft$^3$
- Marblehill, GA:           80 lb/ft$^3$
- Adams, MA:                80 lb/ft$^3$
- Lucerne Valley, CA:       80 lb/ft$^3$

d.  The complete, unabridged reports from any testing used to support representations of INSTALLED DENSITY or any other densities shall be provided to GILSULATE in writing within thirty (30) days of making any such representations.  Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

e.  Any THERMAL CONDUCTIVITY value for DriTherm unless it is specific to each source of the DriTherm material and is determined through APPROPRIATE THERMAL CONDUCTIVITY TESTING.

As used herein, THERMAL CONDUCTIVITY shall mean the thermal conductivity value of the DriTherm material at its INSTALLED DENSITY, represented in units of Btu-in/hr-ft$^2$°F at approximately 100°F and 300°F.

As used herein, APPROPRIATE THERMAL CONDUCTIVITY TESTING shall mean:

i.   Testing performed by an independent, third party testing laboratory that is certified or accredited in the actual test method that is to be performed.

ii.  Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

iii. Testing performed in accordance with ASTM C177, at the INSTALLED DENSITY as determined by APPROPRIATE DENSITY TESTING as set forth herein.

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

f. Unless APPROPRIATE THERMAL CONDUCTIVITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for THERMAL CONDUCTIVITY of DriTherm shall be as follows:

- Quincy, IL:   0.87 Btu-in/hr-ft$^2$°F at 100°F
  1.25 Btu-in/hr-ft$^2$°F at 300°F
- Marble Falls, TX:   0.99 Btu-in/hr-ft$^2$°F at 100°F
  1.36 Btu-in/hr-ft$^2$°F at 300°F
- Marblehill, GA:   0.99 Btu-in/hr-ft$^2$°F at 100°F
  1.36 Btu-in/hr-ft$^2$°F at 300°F
- Adams, MA:   0.99 Btu-in/hr-ft$^2$°F at 100°F
  1.36 Btu-in/hr-ft$^2$°F at 300°F
- Lucerne Valley, CA:   0.99 Btu-in/hr-ft$^2$°F at 100°F
  1.36 Btu-in/hr-ft$^2$°F at 300°F

Alternatively, Defendants can advertise estimated thermal conductivity values determined by standard reference guides, based on APPROPRIATE DENSITY TESTING.

g. The complete, unabridged reports from any testing used to support representations of THERMAL CONDUCTIVITY shall be in writing, and provided to GILSULATE within thirty (30) days of making any representations of THERMAL CONDUCTIVITY. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

h. Any product performance characteristics for DriTherm that are not determined through valid, appropriate testing, using a test methodology established by a recognized testing agency or body, provided that such a standardized testing methodology exists, and performed by an independent, third party testing laboratory.

i. That DriTherm is to be load bearing, unless supported by appropriate testing performed by an independent, third party laboratory.

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

j.  That DriTherm is designed to support underground piping without the need for permanent supports, unless supported by appropriate testing performed by an independent, third party laboratory and analysis.

k.  That DriTherm has superior thermal insulating properties as compared to Gilsulate®500XR.

l.  That DriTherm is certified to be 100% hydrophobic.

m.  That DriTherm is the most hydrophobic loose-fill product on the market.

n.  That the so-called "10-Foot Head of Water Test" was devised by the Army Corps of Engineers or is recognized by the Army Corps of Engineers, any federal agency, or any other recognized testing body or organization as a testing standard.

o.  That the DriTherm formula sold as of the date of this Injunction meets the current UFGS standard for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p.  That DriTherm meets non-existent, abandoned, or obsolete classification specifications, including, but not limited to UFGS letter classification system or soil conditions, NFGS, outdated UFGS, FCGS, ETL standards, or VA standards.

q.  That DriTherm is the only product of its kind rated for soils in below freezing conditions.

r.  That DriTherm is suitable for use in below-freezing or cryogenic applications, unless supported by appropriate testing performed by an independent, third party laboratory.

s.  That DriTherm provides or creates a positive vapor barrier.

t.  That DriTherm is an equal alternative to or replacement for Gilsulate®500XR.

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

u. That DriTherm is approved by the Department of Defense, the Veterans Administration, the Army Corps of Engineers, any military branch, or any other federal government agency.

v. That the National Aeronautic and Space Administration (NASA) has endorsed or otherwise attested to the insulation qualities of DriTherm.

2. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about Gilsulate or the Gilsulate®500XR product:

a. Any representations regarding the performance properties of Gilsulate®500XR that are false or misleading.

b. That the Gilsulate product has changed formula since being introduced in the marketplace.

c. That Gilsulate's customers do not have any way of knowing the track record of the Gilsulate product they receive, or when it was invented.

d. That the Gilsulate product has large inter-particle friction which allows moisture ingress and requires mechanical compaction.

e. That Gilsulate®500XR absorbs water.

f. That Gilsulate®500XR is not waterproof and relies on the heat of the piping system to remain dry.

g. That Gilsulate®500XR is or has been reported to gain up to 4.54% moisture when exposed to wet conditions.

h. That the DriTherm is safer than the Gilsulate product.

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

   i.  That Gilsulate®500XR contains fractured silica, harsh chemicals, or fillers that may cause skin abrasions or respiratory problems.

   j.  False or misleading statements regarding the composition of Gilsulate®500XR.

   k.  That Gilsulate®500XR is difficult to rod vibrate or otherwise install.

   l.  That Gilsulate®500XR requires twice the labor and time to properly install as compared to DriTherm.

   m. That delivery times for Gilsulate®500XR are or may be an issue.

   n.  That Gilsulate®500XR has a large carbon footprint.

   o.  That Gilsulate®500XR does not meet the current UFGS for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

   p.  That the installed density of Gilsulate®500XR is not 40-42 lb/ft$^3$.

3.  IT IS FURTHER ORDERED THAT, within ten (10) days of the issuance of this Injunction, DTI will provide written notification to all independent distributors identified in the Parties' Settlement Agreement, by certified mail or similar method requiring a return receipt, as follows:

   a.  That DTI has been enjoined by the United Stated District Court for the Central District of California from engaging in certain conduct and making certain representations regarding DriTherm and Gilsulate®500XR, along with which a copy of this Injunction issued by the Court is to be provided;

   b.  That, as a condition of distributing or selling the product, the distributors, representatives, and sales persons must fully comply with all of the terms of the Injunction;

c. That DTI will provide revised product literature that fully complies with the Injunction;

d. That the distributors, representatives, and sales persons must immediately destroy all printed materials that do not fully comply with the terms of the Injunction;

e. That the distributors, representatives, and sales persons must immediately remove any information about DriTherm or Gilsulate products from the distributors', representatives', or sales persons' websites, and replace it only with newly prepared information to be provided by DTI; and

f. That distributors, representatives, and sales persons are not authorized to develop or distribute any materials about DriTherm without obtaining prior approval from DTI.

4. IT IS FURTHER ORDERED THAT DTI shall file with this Court and serve upon GILSULATE within forty-five (45) days after the issuance of this Injunction, an affidavit, sworn to under penalty of perjury, setting forth in detail the manner and form in which DTI has complied with this Injunction.

5. The Court shall retain jurisdiction to enforce the terms of this Order.

The Clerk shall close this action.

IT IS SO ORDERED.

DATED: 5/29/2014

RONALD S.W. LEW
_____
HON. RONALD S.W. LEW
Senior U.S. District Judge

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

# EXHIBIT "2"

Settlement Agreement

# EXHIBIT C

1. 3iSupply Company

2. Alsip's Industrial Products

3. Ed Reed Company

4. Engineered Fluid Systems

5. GIS Inc.

6. Harris & Associates

7. J.D. Acers Company

8. Keelan & Associates

9. Kijoda Sales

10. Little, Inc.

11. Pacific Sales Associates

12. Process Systems, Inc.

13. Pump & Specialties

14. Scarano & Halvor (SPD Inc.)

15. Shultz & James

16. Summers & Associates

17. The George Yardley Company

18. Danny Cobucci

19. AHM Associates

20. Glass Cell Isofab

21. Metro Supply

22. All American Supply

**EXHIBIT "3"**

1    JAMES C. POTEPAN (SBN 107370)
     Email: james.potepan@leclairryan.com
2    JAMES C. HILDEBRAND (SBN 150319)
     Email: james.hildebrand@leclairryan.com
3    LeClairRyan LLP
     725 S. Figueroa Street, Suite 350
4    Los Angeles, CA 90017
     Telephone: (213) 488-0503
5    Facsimile: (213) 624-3755

6    Attorneys for Defendants
     DRITHERM INTERNATIONAL, INC. and
7    JARED SANDMAN

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12   GILSULATE INTERNATIONAL,          CASE NO. CV 13-01012 RSWL (JPRx)
     INC. a California corporation,
13                                     Judge: Hon. Ronald S.W. Lew
             Plaintiff,                Complaint Filed: February 12, 2013
14
          v.                          **DECLARATION OF JARED
15                                     SANDMAN CONCERNING
     DRITHERM INTERNATIONAL,           COMPLIANCE WITH THE TERMS
16   INC., a New Jersey corporation;   OF THE STIPULATED
     JARED SANDMAN, an individual;     INJUNCTION (DKT. NO. 49)**
17   and DOES 1 through 10, inclusive,

18           Defendants.

19

20

21

22

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

# DECLARATION OF JARED SANDMAN

I, Jared Sandman, declare:

1.     I am the president of DriTherm International, Inc., a defendant in the case of *Gilsulate International, Inc. v. DriTherm International, Inc.*, United States District Court for the Central District of California Case No. CV 13-01012 RSWL (JPRx).  Except as otherwise indicated, I have personal knowledge of the matters stated in this Declaration and could competently testify thereto if called to do so.

2.     The parties to this action, Gilsulate International, Inc. ("Plaintiff") and DriTherm International, Inc. ("DTI"), entered into an agreement to settle the action. As part of the settlement, DTI agreed to have a Judgment for Stipulated Permanent Injunction entered in the action.  A Judgment for Stipulated Permanent Injunction was entered by the Court pursuant to the parties' agreement (the "Stipulated Injunction") (Dkt. No. 49).  The Stipulated Injunction is dated May 29, 2014 and, as reflected on the Court's docket, was entered on May 30, 2014.

3.     The Stipulated Injunction provides that "DTI shall file with this Court and serve upon [Plaintiff] within forty-five (45) days after the issuance of this Injunction, an affidavit, sworn under penalty of perjury, setting forth in detail the manner and form in which DTI has complied with this Injunction."  I am now providing this Declaration to describe the manner in which DTI has complied with the Stipulated Injunction.

4.     Paragraph 1 of the Stipulated Injunction prohibits certain statements about the specifications of DTI's DriTherm product.  To comply with this portion of the Stipulated Injunction, DTI has ceased distributing the DriTherm Specification Sheet a/k/a DriTherm Data Sheet ("Specification Sheet"), DriTherm Sample Specifications ("Sample Specifications"), and a manual consisting of about 57 pages that describes the DriTherm product and the installation of the product ("DriTherm Manual") that were used for at least some period of time before the entry of the Stipulated Injunction.

5.     One way by which the Specification Sheet, Sample Specifications and DriTherm Manual were distributed prior to the entry of the Stipulated Injunction was by linking them on DTI's www.dritherm.com website (the "DriTherm website"). I instructed the person who maintains the DriTherm website to remove the Specification Sheet, Sample Specifications, and DriTherm Manual from the website. I have reviewed the DriTherm website and can now find no active link through which access to the Specification Sheet, Sample Specifications, or DriTherm Manual can be made.

6.     I also reviewed the DriTherm website to identify statements of specifications of DriTherm that are not permitted under the Stipulated Injunction on the website. To the extent any such statements were identified, I instructed the person who maintains the DriTherm website to remove the statements from the website. I have reviewed the DriTherm website and can now find no instances of statements of specifications of DriTherm that are not permitted under the Stipulated Injunction on the website.

7.     Paragraph 1 of the Stipulated Injunction prohibits the statement "that the DriTherm formula sold as of the date of this Injunction meets the current UFGS standard for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010)." To the extent that any such statement was included in the DriTherm Specification Sheet, Sample Specifications, or DriTherm Manual, its use has been discontinued by the termination of the use of these materials as discussed above. I have reviewed the DriTherm website to identify any use of the prohibited statement on the website. To the extent any use of the statement on the website was identified, I instructed the person who maintains the DriTherm website to remove the statement from the website. I have reviewed the DriTherm website and can now find no instances of the prohibited statement appearing on the website.

8.     Paragraph 1 of the Stipulated Injunction prohibits statements "that DriTherm is approved by the Department of Defense, the Veterans Administration,

1    the Army Corps of Engineers, any military branch, or any other federal government

2    agency." To the extent that any such statements were included in the DriTherm

3    Specification Sheet, Sample Specifications, or DriTherm Manual, the use of the

4    statements has been discontinued by the termination of the use of these materials as

5    discussed above. I have reviewed the DriTherm website to identify any use of the

6    prohibited statements on the website. To the extent any use of the statements on the

7    website was identified, I instructed the person who maintains the DriTherm website

8    to remove the statements from the website. I have reviewed the DriTherm website

9    and can now find no instances of the prohibited statements appearing on the

10    website.

11        9.    Paragraph 1 of the Stipulated Injunction prohibits the statement "that

12    the National Aeronautic and Space Administration (NASA) has endorsed or

13    otherwise attested to the insulation qualities of DriTherm." At one time, parts of a

14    letter from NASA concerning its use of DriTherm, or the predecessor product to

15    DriTherm, appeared on the DriTherm website. The statements taken from NASA's

16    letter have been removed from the DriTherm website.

17        10.    Paragraph 1 of the Stipulated Injunction prohibits several other

18    statements including "that DriTherm is certified to be 100% hydrophobic" and "that

19    DriTherm provides or creates a positive vapor barrier." These and several other

20    statements prohibited in Paragraph 1 of the Stipulated Injunction were based on

21    statements contained in documents titled "DriTherm Features Compared to

22    Gilsulate 500" and "Important Considerations – DriTherm vs Gilsulate." DTI is

23    not distributing or using the "DriTherm Features Compared to Gilsulate 500" or

24    "Important Considerations – DriTherm vs Gilsulate" documents.

25        11.    A page on the DriTherm website included a matrix that compared

26    several types of pipe insulation products including DriTherm, other powder

27    insulations, preinsulated pipe, and fiberglass. A row in the matrix labeled "Load

28    Bearing" was deleted to avoid making any statements about DriTherm load bearing

DECLARATION OF JARED SANDMAN CONCERNING COMPLIANCE WITH STIPULATED INJUNCTION

1  characteristics that are prohibited by Paragraph 1 of the Stipulated Injunction. A
2  document with a similar matrix was linked to the website. The row in the matrix
3  labeled "Load Bearing" was also deleted from this linked document.

4      12.   I have reviewed the DriTherm website to identify any other uses of the
5  statements prohibited by Paragraph 1 of the Stipulated Injunction on the website.
6  To the extent any such statements were identified, I instructed the person who
7  maintains the DriTherm website to remove the statements from the website. I have
8  reviewed the DriTherm website and can now find no instances of any of the
9  statements prohibited by Paragraph 1 of the Stipulated Injunction appearing on the
10 website.

11     13.   Information about DTI and the DriTherm product was posted on the
12 LinkedIn business oriented networking site. I have reviewed the information about
13 DTI and the DriTherm product on the LinkedIn website to identify any statements
14 prohibited by Paragraph 1 of the Stipulated Injunction on the site. To the extent
15 any statements were identified, I have removed the statements from the LinkedIn
16 site.

17     14.   Information about DTI and the DriTherm product was posted on the
18 ThomasNet.com online business directory. I have reviewed the information about
19 DTI and the DriTherm product on the ThomasNet.com website to identify any
20 statements prohibited by Paragraph 1 of the Stipulated Injunction on the site. To
21 the extent any such statements were identified, my office assistant and I asked
22 representatives of ThomasNet.com to remove the statements. I have reviewed the
23 ThomasNet.com website and can now find no instances of any of the statements
24 prohibited by Paragraph 1 of the Stipulated Injunction appearing on the website.

25     15.   Paragraph 1 of the Stipulated Injunction prohibits statements about
26 "any INSTALLED DENSITY for DriTherm unless the specifications are supported
27 by APPROPRIATE DENSITY TESTING" and statements about "any THERMAL
28 CONDUCTIVITY value for DriTherm unless it is specific to each source of the

1   DriTherm material and is determined through APPROPRIATE THERMAL

2   CONDUCTIVITY TESTING." The Stipulated Injunction provides that density and

3   thermal conductivity testing shall be conducted on random samples from each

4   source of the DriTherm material, of which there are presently five. The Stipulated

5   Injunction provides that copies of the complete, unabridged reports of any testing

6   used to support representations of the density or thermal conductivity of DriTherm

7   shall be provided to Plaintiff within thirty days of making any such representations.

8   As of the date of this declaration, DTI has had density and thermal conductivity

9   testing performed on random samples of DriTherm from each of the five sources of

10  DriTherm. However, I have not yet received formal reports from the testing

11  facilities that performed the density and thermal conductivity tests. If these tests

12  are used to support representations of the density or thermal conductivity of

13  DriTherm, then copies of the test reports will be provided to Plaintiff as provided

14  for in the Stipulated Injunction.

15      16.    Paragraph 2 of the Stipulated Injunction prohibits certain statements

16  about Plaintiff's Gilsulate product, including, for instance, statements "that the

17  Gilsulate product has changed formula since being introduced in the marketplace,"

18  "that Gilsulate's customers do not have any way of knowing the track record of the

19  Gilsulate product they receive, or when it was invented," and "that

20  Gilsulate®500XR is not waterproof and relies on the heat of the piping system to

21  remain dry." These and several other statements prohibited by Paragraph 2 of the

22  Stipulated Injunction were based on statements contained in the documents titled

23  "DriTherm Features Compared to Gilsulate 500" and "Important Considerations –

24  DriTherm vs Gilsulate." DTI is not distributing or using the "DriTherm Features

25  Compared to Gilsulate 500" or "Important Considerations – DriTherm vs Gilsulate"

26  documents.

27      17.    As previously indicated, a page on the DriTherm website included a

28  matrix that compared several types of pipe insulation products such as DriTherm,

1   other powder insulations, preinsulated pipe, and fiberglass. The column in the

2   matrix labeled "other powder insulations" was deleted to avoid making any implied

3   statements about Gilsulate that are prohibited by Paragraph 2 of the Stipulated

4   Injunction. A document with a similar matrix was linked to the website. The

5   column in the matrix labeled "other powder insulations" was also deleted from this

6   linked document.

7       18.   I have reviewed the DriTherm website to identify any other uses of the

8   statements prohibited by Paragraph 2 of the Stipulated Injunction on the website.

9   To the extent any such statements were identified, I instructed the person who

10  maintains the DriTherm website to remove the statements from the website. I have

11  reviewed the DriTherm website and can now find no instances of statements

12  prohibited by Paragraph 2 of the Stipulated Injunction appearing on the website.

13      19.   Paragraph 3 of the Stipulated Injunction provides that, within ten days

14  of the issuance of the Stipulated Injunction, DTI will provide written notification to

15  all independent distributors identified in the parties' Settlement Agreement that it

16  has been enjoined from engaging in certain conduct and from making certain

17  representations regarding DriTherm and Gilsulate. The Settlement Agreement

18  identified the names of twenty-one entities and one individual to whom such notice

19  had to be sent. The identified individual (Danny Cobucci) is associated with one of

20  the twenty-one listed entities (Pumps & Specialties).

21      20.   In preparation for sending the required letter to the entities identified in

22  the parties' Settlement Agreement, I had my office assistant confirm the current

23  mailing address for each entity. On June 5, 2014, I sent a letter to each of the

24  twenty-one entities identified in the Settlement Agreement that stated, among other

25  things, that DTI has been enjoined by the United States District Court for the

26  Central District of California from engaging in certain conduct and from making

27  certain representations regarding the DriTherm and Gilsulate 500XR products (the

28  letter sent to Pumps & Specialties was addressed to Danny Cobucci at Pumps &

1   Specialties).  A copy of the Stipulated Injunction was enclosed with each of the

2   letters that were sent to the entities that were identified as independent distributors

3   in the parties' Settlement Agreement.  A true and correct exemplar copy of the

4   letter that was sent to each of the entities identified as an independent distributor in

5   the parties' Settlement Agreement is attached hereto as Exhibit A.

6       21.    Each of the letters that was sent to the identified independent

7   distributors was mailed by Federal Express for overnight delivery.  I have obtained

8   a Proof of Delivery of each of the twenty-one letters from Federal Express.  These

9   Proofs of Delivery indicate that each of the letters was delivered on June 6, 2014.  I

10  have obtained copies of the signatures of the persons who accepted delivery of

11  thirteen of the letters.  With regard to the remaining eight letters, I sent an email to

12  the addressee of each of the letters requesting confirmation of receipt of the letter

13  and the enclosed Stipulated Injunction.  In response to these emails, I received

14  confirmation of receipt of each of the eight letters and Stipulated Injunction, which

15  included confirmation of receipt by the Ed Reed Company (Ted Reed), Engineered

16  Fluid Systems (Curt Winbourne), Harris & Associates (Mike Harris), Keelan &

17  Associates (Larry Keelan), Pacific Sales Associates (Ron Dunn), Process Systems,

18  Inc. (James Bath), Pumps & Specialties (Danny Cobucci), and Scarano & Harris

19  (Henry Scarano).

20      22.    It was brought to my attention that there were statements about

21  DriTherm on the websites www.prweb.com and www.mapyourshow.com that

22  could be prohibited by the Stipulated Injunction.  I contacted the person whom I

23  believed would be able to remove the statements about DriTherm on the

24  www.prweb.com website and requested that the statements be removed from the

25  website.  I was in the process of taking steps to have the statements about DriTherm

26  on the www.mapyourshow.com website removed when I was informed that

27  Plaintiff's attorney had communicated that he had "been able to get the Map Your

28  Show link taken down, so that is no longer an issue."  I have reviewed the

1   www.prweb.com and www.mapyourshow.com websites and can now find no

2   instances of any of the statements prohibited by the Stipulated Injunction appearing

3   on the websites.

4        23.    The review of DTI's www.dritherm.com website and the removal of

5   any statements on the website, or in documents linked to the website, that are

6   prohibited by the Stipulated Injunction are described above.  In addition to the

7   www.dritherm.com website, DTI maintains the website address

8   "www.driwrap.com."  However, the www.driwrap.com web address only directs

9   users to the same website that is accessed by the use of the www.dritherm.com web

10  address.  Accordingly, changes to the website accessed through the use of the

11  www.dritherm.com web address would also effect changes to the website if

12  accessed through the www.driwrap.com web address.

13       I declare under penalty of perjury under the laws of the United States of

14  America that the foregoing is true and correct.  Executed on July 11, 2014.

15

16

17                                          Jared Sandman

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



**DRITHERM**
**INTERNATIONAL INC.**
High Performance Insulation / Corrosion Protection Products

June _____, 2014

**VIA FEDEX OVERNIGHT**

Name of Distributor
Address

**RE: Gilsulate v. Dritherm Settlement Terms: <u>Actions Required</u>**

Dear Dritherm Distributor:

As you may or may not be aware, there has been litigation between Gilsulate International Inc. and Dritherm International Inc. in the United States District Court for the Central District of California. This litigation has recently been resolved by an agreement between the parties. Certain terms of the settlement agreement affect you in connection with your in your efforts to market and sell DriTherm. These terms are summarized below.

- **Stipulated Injunction:** As part of the agreement to settle the litigation, DriTherm International Inc. has been enjoined by the United States District Court for the Central District of California from engaging in certain conduct and from making certain representations regarding the DriTherm and Gilsulate 500XR products. A copy of the Stipulated Injunction is enclosed. As a condition of distributing or selling DriTherm you must fully comply with all of the terms of the enclosed Stipulated Injunction that apply to you.

- **Product Literature:** We will be providing you with revised DriTherm product literature that will be in compliance with the terms of the injunction. We are working to complete the new literature as soon as possible. In the meantime, you must immediately destroy all printed materials that do not fully comply with the terms of the injunction. To be certain that you are in compliance with these requirements, please assume that this means destroying all written and electronic marketing materials relating to either DriTherm or Gilsulate that are in your possession as of the date of this letter.

2500 Plaza 5, Harborside Financial Center, Jersey City, NJ 07311
Toll Free: (800)343-4188 Fax: (973)808-2815 www.dritherm.com

Exhibit A                                    Page 10



**DRITHERM**
**INTERNATIONAL INC.**
High Performance Insulation / Corrosion Protection Products

- **Website Information:** All information regarding the Dritherm and Gilsulate products that are not in compliance with the terms of the injunction must also be immediately removed from websites that you own or control. Again, to ensure compliance with these requirements, please assume that this means removing all information about the Dritherm and Gilsulate products that is posted or linked to your websites as of the date of this letter.

- **Unauthorized DriTherm Product Literature:** As indicated, we will be providing you with revised DriTherm product literature that will be in compliance with the terms of the injunction. Under the terms of the injunction, you must not develop, create or distribute any other materials about DriTherm without obtaining the prior approval of Dritherm International Inc.

Please do not hesitate to contact me at any time if you have questions or concerns about the foregoing. I am looking forward to moving past this particular issue. Over the coming weeks, I will be making an effort to contact you to discuss this matter and to work towards selling DriTherm in the positive and productive way we have always attempted to do.

Sincerely,

Jared Sandman
President
Dritherm International Inc.

Enclosure: Judgment for Stipulated Permanent Injunction

2500 Plaza 5, Harborside Financial Center, Jersey City, NJ 07311
Toll Free: (800)343-4188 Fax: (973)808-2815 www.dritherm.com

Exhibit A                    Page 11

**CASE NAME:**      **GILSULATE INTERNATIONAL, INC. v. DRITHERM INTERNATIONAL, INC., et al.**

**CASE NO.:**      **CV13-01012-RSWL (JPRx)**

## PROOF OF SERVICE

STATE OF CALIFORNIA       )
                                 ) ss.
COUNTY OF LOS ANGELES )

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action; my business address is 725 South Figueroa Street, Suite 350, Los Angeles, California 90017.

     On July 11, 2014, I served the foregoing document(s): **DECLARATION OF JARED SANDMAN CONCERNING COMPLIANCE WITH THE TERMS OF THE STIPULATED INJUNCTION (DKT. NO. 49)** described on the interested parties in this action by placing the true copies thereof enclosed in a sealed envelope(s) addressed as follows:

| | |
|---|---|
| David S. Poole, Esq.<br>Samuel R.W. Price, Esq.<br>POOLE & SHAFFERY, LLP<br>400 South Hope Street, Suite 1100<br>Los Angeles, California 90071<br>Telephone: (213) 439-5390<br>Facsimile: (213) 439-0183<br>dpoole@pooleshaffery.com<br>sprice@pooleshaffery.com | Attorneys for Plaintiff<br>**GILSULATE INTERNATIONAL, INC.** |

[X]    **By United States Mail:** I caused such envelope to be deposited in the mail at Los Angeles, CA 90017. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter day is more than 1 day after date of expiration of deposit for mailing in affidavit.

| | |
|---|---|
| **CASE NAME:** | **GILSULATE INTERNATIONAL, INC. v. DRITHERM INTERNATIONAL, INC., et al.** |
| **CASE NO.:** | **CV13-01012-RSWL (JPRx)** |

**PROOF OF SERVICE (CONT'D.)**

[ ]    **By Facsimile Transmission:** At approximately _____ a.m./p.m., I caused said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was (___). The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

[ ]    **By Email or Electronic Transmission:** The above-referenced documents (was sent via electronic transmission to the addressee(s) email address as indicated on the attached service list.

[ ]    **Personal Service By Messenger Delivery:** I caused the document(s) to be delivered in such envelope by hand to the offices of the addressee.

[ ]    **By Overnight Delivery:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder. (C.C.P. § 1013(d)(e))

[X]    **(FEDERAL)** I am employed in the office of a member of the bar of this court at whose direction the service was made. I certify under penalty of perjury that the foregoing is true and correct.

Executed on July 11, 2014, at Los Angeles, California.

_Toni Pierson_
Toni Pierson